UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| CITY OF COUNCIL BLUFFS, IOWA, )<br>)<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>THE INTERIOR; RYAN K. ZINKE, in his )<br>official capacity as Secretary of the United )<br>States Department of the Interior; NATIONAL )<br>INDIAN GAMING COMMISSION; JONODEV )<br>OSCEOLA CHAUDHURI, in his official capacity )<br>as Chairman of the National Indian Gaming )<br>Commission; and KATHRYN ISOM-CLAUSE, )<br>in her official capacity as Vice Chair of the )<br>National Indian Gaming Commission, )<br>)<br>)<br>Defendants. )<br>_____ ) | Civ. No.<br><br>**COMPLAINT FOR<br>DECLARATORY JUDGMENT<br>AND INJUNCTIVE RELIEF** |

COMES NOW the Plaintiff City of Council Bluffs, Iowa, and files this Complaint against the above-named defendants, stating in support as follows:

## NATURE OF THE ACTION

1. This is a challenge to a November 13, 2017 final decision ("2017 Decision") of the United States Department of the Interior ("DOI") and the National Indian Gaming Commission ("NIGC") approving an amended gaming ordinance submitted by the Ponca Tribe of Nebraska. The 2017 Decision purported to identify lands located in Carter Lake, Iowa ("Carter Lake Tract") taken into trust by the United States for the Ponca Tribe of Nebraska ("Tribe") on or about February 2003 as eligible for tribal gaming. The Indian Gaming

Regulatory Act ("IGRA") generally prohibits gaming on Indian lands acquired after the IGRA's date of enactment, October 17, 1988, unless certain exceptions apply.

2. This is the NIGC's second opportunity to review the facts surrounding the status of the Carter Lake Tract and issue a final agency decision. The NIGC issued a previous decision on December 31, 2007 ("2007 NIGC Decision"). Although IGRA and accompanying NIGC and Bureau of Indian Affairs ("BIA") regulations contemplate that DOI is supposed to review and concur with NIGC restored lands decisions, the 2007 NIGC Decision did not receive the concurrence of the DOI before it was issued.

3. In response to the blatant errors and omissions in that Decision, the States of Nebraska and Iowa both sued the NIGC and the DOI, and the City of Council Bluffs, Iowa, intervened on the side of the plaintiffs. The District Court held in favor of the States and the City and reversed the agency decision, and the agencies brought a "limited appeal." The Eighth Circuit raised numerous concerns regarding the decision, but ultimately determined that principles of administrative law required remand so that the NIGC, with the concurrence of the DOI, could interpret applicable law and properly consider all the relevant factors in reaching its decision. The case was remanded to the NIGC for further proceedings.

4. On November 13, 2017, the NIGC, this time with DOI's concurrence, issued a final agency decision. The 2017 Decision affirms the 2007 NIGC Decision, yet again determining that the Carter Lake Tract qualified as "restored lands" under the exception provided under IGRA, codified at 25 U.S.C. § 2719(b)(1)(B)(iii).

5. The Tribe was restored to Federal recognition by the Ponca Restoration Act, Pub. L. No. 101-484 (Oct. 31, 1990), formerly codified at 25 U.S.C. § 983. The Ponca Restoration Act remains in effect, but was removed from the United States Code as of 25 U.S.C. Supp. IV

(September 2016) as being of special and not general application in an effort by codifiers to improve the code's organization. For ease of reference, this complaint continues to refer to the Ponca Restoration Act's sections as previously codified.

6. As was true of its 2007 decision, the 2017 Decision issued by the NIGC with the concurrence of the DOI is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with applicable law, including the fact that it is contrary to and exceeds the express terms of the Congressional mandate in the Ponca Restoration Act and the IGRA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346(a)(2) (civil action against the United States). Judicial review and declaratory relief are authorized by 28 U.S.C. § 2201 (declaratory judgment) and 5 U.S.C. § 701-706 (Administrative Procedure Act).

8. Venue is proper in this court pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(a)(1). Venue is also appropriate under 5 U.S.C. § 703.

## PARTIES

9. Plaintiff City of Council Bluffs, Iowa ("Council Bluffs") is a municipal corporation of the State of Iowa located in Pottawattamie County approximately seven miles from the Carter Lake Tract, whose residents and citizens are substantially affected by NIGC's decision to allow Indian gaming on the Carter Lake Tract for the reasons described below.

10. Defendant DOI is the federal agency that holds the Carter Lake Tract in trust for the Tribe and that concurred with the 2017 Decision. Ryan K. Zinke is the Secretary of the United States Department of the Interior ("Secretary") and is sued in his official capacity. Defendant NIGC is the administrative agency which issued the 2017 Decision that is being

appealed in the present instance. Defendant Jonodev Osceola Chaudhuri is the Chairman of the National Indian Gaming Commission ("Chairman") and is sued in his official capacity. Defendant Kathryn Isom-Clause is the Vice-Chair of the National Indian Gaming Commission ("Vice-Chair") and is sued in her official capacity.

## THE PONCA TRIBE'S STATUS UNDER FEDERAL LAW

11. Federal recognition of the Tribe was terminated on September 5, 1962 pursuant to Pub. L. No. 87–629, § 1 (Sept. 5, 1962), 76 Stat. 429, formerly codified at 25 U.S.C. § 971 *et seq*. On October 31, 1990, the Ponca Restoration Act, 25 U.S.C. §§983-983h, restored federal recognition to the Tribe. 25 U.S.C. §983 *et seq*.

12. The Carter Lake Tract was not taken into trust under the terms of the Ponca Restoration Act. On September 24, 1999, the Tribe purchased in fee the Carter Lake Tract which consists of approximately 4.8 acres of land in Carter Lake, Iowa.

13. On or about January 10, 2000, the Tribe passed a resolution seeking to have DOI place the Carter Lake Tract into trust for the Tribe. The Tribe represented to DOI at that time that the Tribe planned to place a healthcare facility on the land. *Iowa v. Great Plains Reg'l Dir., Bureau of Indian Affairs*, 38 IBIA 42, 44 (2002).

14. On or about February 23, 2000, the BIA Great Plains Regional Director wrote letters to Iowa state and county officials indicating that she was considering accepting the Carter Lake Tract into trust for the benefit of the Tribe. *Id.* at 44. At no time was Council Bluffs notified of the pending fee to trust application by the BIA Great Plains Regional Director.

15. The State of Iowa and Pottawatomie County appealed the BIA Great Plains Regional Director's decision to take the Carter Lake Tract into trust, on the basis that the Director failed to take into consideration the Tribe's true intent to utilize the Carter Lake Tract to

build a casino. *Id.* at 52.

16. On August 7, 2002, the IBIA affirmed the ruling of the BIA Great Plains Regional Director, holding that the Carter Lake Tract "was purchased … and is currently used for health care facilities" and that any possible gaming use was speculative. *Id.*

17. On December 6, 2002, the BIA published in newspapers of general circulation, including the *Council Bluffs Nonpareil*, a corrected notice of intent to take land into trust wherein the Tribe acknowledged the Carter Lake Tract was to be taken into trust for non-gaming related purposes and that the Carter Lake Tract was not eligible for gaming under the exceptions listed in 25 U.S.C. § 2719(b)(1)(B). (December 6, 2002 Corrected Public Notice).

18. The purpose of the notice was to advise the public of the BIA's intent to take the land into trust so that affected parties could sue in federal court to prevent the trust acquisition before the land was formally acquired because at the time, it was the common understanding of the Federal government and the parties to this dispute that the Quiet Title Act, 28 U.S.C. § 2409(a), precluded judicial review after the United States acquired title. Preamble to BIA regulation, 61 Fed.Reg. 18082 (Apr. 24, 1996), cited in and confirmed by NIGC Final Decision and Order, December 31, 2007, at 14. A true and correct copy of the NIGC's Final Decision and Order from December 31, 2007 is attached hereto as Exhibit 2.

19. Before the land was taken into trust, the State of Iowa and Pottawattamie County, and other parties with standing including Council Bluffs, had the right to seek judicial review of the IBIA's decision. However, in light of the public notice described above, providing notice of the Tribe's clearly stated intent not to conduct gaming on the Carter Lake Tract, the State of Iowa and Pottawattamie County agreed to forego any further litigation as to the appropriateness of the Interior Board of Indian Appeals' (IBIA) decision, and thus detrimentally relied on their

agreement with the Tribe and the public notice. Council Bluffs also detrimentally relied on the December 6, 2002 Corrected Public Notice.

20. The Carter Lake Tract was taken into trust by the DOI on or about February 2003.

### THE TRIBE'S EFFORTS TO OBTAIN AN AMENDMENT TO THE CARTER LAKE TRACT ORDINANCE TO ALLOW FOR GAMING

21. On or about July 23, 2007, the Tribe submitted a site-specific Class II gaming ordinance amendment ("Carter Lake Tract Ordinance") to the Chairman for review and approval. In this ordinance, the Tribe defined the Carter Lake Tract as "Indian lands" meeting the restored lands exception to the general prohibition on gaming on lands acquired after October 17, 1988, detailed in 25 U.S.C. § 2719(b)(1)(B)(iii).

22. A memorandum was issued by Michael Gross, NIGC Associate General Counsel, to the Chairman on October 22, 2007, wherein it was determined that "the factual circumstances surrounding the acquisition of the Carter Lake land show that it was not taken into trust as part of the Tribe's restoration." A true and correct copy of the October 22, 2007 Memorandum is attached hereto as Exhibit 3. Based on the reasoning detailed in the October 22, 2007 Memorandum, the Chairman disapproved the ordinance.

### STATUTORY AUTHORITY REGARDING TRIBAL LANDS

23. Pursuant to 25 U.S.C. § 5108 (the Indian Reorganization Act, formerly classified as 25 U.S.C. § 465 and editorially reclassified in 2016 as part of an effort of codifiers to improve the organization of the code), the Secretary has authority to take lands into trust for the benefit of Indian tribes.

24. Under IGRA, the Secretary has limited authority to authorize gaming on lands acquired into trust for the benefit of an Indian tribe after October 17, 1988, the effective date of IGRA. Pursuant to 25 U.S.C. § 2719, gaming regulated by IGRA shall not be conducted on

lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988 unless the lands fit within one of the exceptions set forth in said statute. One of those exceptions provides that the prohibition on gaming does not apply to lands that are taken into trust as part of "the restoration of lands for an Indian tribe that is restored to federal recognition." 29 U.S.C. § 2719(b)(1)(B)(iii).

25. The Secretary does not have any authority under IGRA or any other statute to determine whether tribal gaming is permitted on a particular parcel of land other than as expressly authorized by 25 U.S.C. § 2719(b)(1).

26. Pursuant to 25 U.S.C. §2705(a)(3), the Chairman, on behalf of the NIGC and subject to an appeal to the NIGC, has the authority to "approve tribal ordinances or resolutions regulating class II gaming and class III gaming as provided in section 2710 of this title."

27. The Tribe was entitled to appeal the Chairman's decision to deny its proposed amendment to the Carter Lake Tract ordinance to the NIGC under 25 U.S.C. §2705(a)(3) and 25 C.F.R. Part 580.

## THE 2007 NIGC DECISION AND APPEAL TO THE EIGHTH CIRCUIT

28. The Tribe sought review of the Chairman's October 22, 2007 determination in front of the NIGC. Council Bluffs was not a party to that litigation. On December 31, 2007, the NIGC issued a final decision and order reversing the Chairman's decision on the grounds that the Chairman had improperly relied on events that occurred after the Department of the Interior's final agency decision to take the Carter Lake Tract into trust. (NIGC 2007 Order, p. 1-2, see Exhibit 2).

29. The States of Iowa and Nebraska appealed the NIGC's decision to this court, and the City of Council Bluff intervened for the plaintiffs.

30. The grounds plaintiffs raised for seeking a declaratory judgment overturning the NIGC's 2007 decision included that (1) the NIGC lacked jurisdiction to make a restored lands determination necessary to allow gaming without concurrence from DOI and in light of the DOI's approval of the December 6, 2002 Corrected Public Notice; (2) the NIGC decision was arbitrary and capricious in lacking a fact-based, well-reasoned analysis; and (3) the NIGC decision was contrary to the 1990 Ponca Restoration Act, enacted two years after IGRA.

31. The district court declined to decide whether the NIGC's decision was contrary to the Ponca Restoration Act because "[t]he DOI or BIA should be the agency initially deciding whether the Ponca Tribe's Carter Lake, Iowa acquisition went beyond what Congress intended in seeming to limit to Knox and Boyd Counties, Nebraska, real property transferred to the Secretary for the benefit of the Tribe." The court specifically noted that "[n]either the defendants in their briefs nor the NIGC Decision adequately addressed that question of statutory intent."

32. The district court then agreed that the NIGC lacked the authority to declare the Carter Lake land "restored lands" based on the circumstances of the 2003 conveyance in trust that followed the agreement between the Tribe and the State of Iowa. The district court therefore entered a declaratory judgment in favor of the States and Intervenor City of Council Bluffs, reversing the NIGC's decision because the decision lacked a rational basis on the law and facts of the record and was therefore arbitrary and unlawful.

33. The DOI and NIGC brought a "limited appeal" to the Eighth Circuit, asking the court to remand to the NIGC for two limited purposes.

34. First, the Federal agencies asked for a remand to permit NIGC, in consultation with DOI, to weigh the three factors that the Federal government alleged are relevant to the determination of whether the Carter Lake Tract is eligible for gaming under IGRA's "restored

lands" exception—temporal proximity, historical and modern connection to the location, and the factual circumstances of the trust acquisition. The United States argued that the NIGC had incorrectly failed to consider the Tribe's agreement with the State of Iowa memorialized in the December 6, 2002 Corrected Public Notice when it weighed these three factors under what is essentially a totality of the circumstances test.

35. Second, the Federal agencies asked for a remand to permit NIGC, in consultation with the DOI, to determine whether the Ponca Restoration Act limits restored land to parcels taken into trust in Boyd and Knox Counties, Nebraska.

36. The States of Iowa and Nebraska asserted that the district court's reversal of the NIGC's decision should be affirmed without remand because, in part, the unambiguous terms of the Ponca Restoration Act, 25 U.S.C. § 983b(c), provide that restored lands for the Tribe must be located in Knox and Boyd Counties, Nebraska, not in Carter Lake, Iowa.

37. The Eighth Circuit remanded the case, ordering this court to remand to the NIGC to consider, as part of its evaluation of the section 2719 factors for whether the Carter Lake Tract should be considered "restored" and eligible for gaming, first, whether the Ponca Restoration Act limits the land that may be considered "restored" for purposes of IGRA to exclude the Carter Lake Tract, and second, whether the agreement between the Tribe and the State of Iowa that the lands would not be treated as "restored" changed the outcome of the totality of the circumstances test applied under section 2719. *Nebraska ex rel. Bruning v. U.S. Dep't of Interior*, 625 F.3d 501 (8th Cir. 2010).

38. Although the majority of the Eighth Circuit panel decided to remand the case to the agencies, declining to reach the question of the permissible interpretation of the Ponca Restoration Act without an agency or district court record to review, a strong dissent by the

Honorable Judge Charles B. Kornmann explained that because the Ponca Restoration Act is not ambiguous and precludes the NIGC's interpretation treating the Carter Lake Tract as restored lands under IGRA, the NIGC's 2007 decision should be reversed without remand to the NIGC and DOI.

### THE CHALLENGED DECISION: THE NIGC'S NOVEMBER 2017 "AMENDMENT TO FINAL DECISION AND ORDER"

39. On November 13, 2017, the NIGC issued an "Amendment to Final Decision and Order" affirming its original 2007 decision. The 2017 Decision finds, just like the 2007 Decision, that the Carter Lake Tract "is restored lands for a restored tribe." A true and correct copy of the NIGC's 2017 "Amendment to Final Decision and Order," referred to throughout this Complaint as the 2017 Decision, is attached as Exhibit 1.

40. The 2017 Decision finds and concludes that although the Tribe acquiesced briefly to the agreement the Tribe's counsel, Mr. Mason, negotiated with the State of Iowa under which the Tribe agreed not to seek to use the Carter Lake tract for gaming under the section 2719 "restored lands" provision, the Tribe clearly "repudiated" the agreement by 2005.

41. According to the 2017 Decision, "[w]hen the Tribe decided in 2005 to invoke the restored lands exception, Iowa was free to challenge Interior's land-into-trust decision. There was no time-bar to suit as the relevant statute of limitations, 28 U.S.C. § 2401(a), was six years." Yet, in the NIGC's 2007 decision, the Commission explained that the Quiet Title Act, 28 U.S.C. § 2409(a), precluded judicial review after the United States acquired title.

42. The 2017 Decision finds that the alleged agreement between Iowa and the Tribe's attorney was invalid and does not estop the Tribe from seeking the right to game under IGRA's restored lands exception.

43. The 2017 Decision finds that the Tribe subsequently "acquiesced in the agreement for a limited period of time from 2002 to 2005", but also "clearly repudiated" its ratification in 2005. 2017 Decision at p. 26.

44. The 2017 Decision further finds that the Ponca Restoration Act does not limit the Tribe's restored lands to Knox and Boyd Counties, Nebraska, although it fails to identify any ambiguity in the Act that would permit this interpretation. The Ponca Restoration Act makes certain acquisition in Knox and Boyd counties mandatory with no further need for statutory authorization, and, to the extent the Ponca Restoration Act allows DOI to take lands in other location into trust for the Tribe under the general Indian Reorganization Act authority, the statute clearly limits acquisitions under the Restoration Act to the two named Nebraska counties.

45. The 2017 Decision acknowledges the existent of regulations at 25 C.F.R. Part 292 that would provide that the only lands that could qualify for the "restored lands" exception for Ponca would be located in Knox and Boyd counties, but finds that the regulations do not apply because the Ponca submitted their request for a restored opinion before the regulations were in place. Thus, the 2017 Decision concludes that the Ponca application is grandfathered in. The 2017 Decision finds that because the Ponca applied to have the Carter Lake Tract treated as restored lands before these regulations were effective, the regulations somehow support a reading of the Ponca Restoration Act that is in conflict with the 25 C.F.R. Part 292. The 2017 Decision therefore fails to consider whether the Ponca Restoration Act can be reasonably and permissibly interpreted to allow lands outside of Nebraska to be treated as "restored lands" in light of the Part 292 regulations.

46. The 2017 Decision finds, based on questionable analysis, that the agreement between the Tribe and the State of Iowa is invalid and therefore cannot be used to estop the Tribe

11

from seeking the right to game on the property. The 2017 Decision then fails to consider the agreement in the context of weighing the factual circumstances surrounding the Trust acquisition, even though the purpose of the Eighth Circuit's remand was to allow the NIGC to consider all relevant factual circumstances, including the agreement between the Tribe and Iowa that the NIGC says was temporarily acquiesced to by the Tribe.

47.    If the 2017 Decision is allowed to stand, the Tribe will be able to engage in class II gaming under the regulations of the NIGC.

48.    Council Bluffs is injured by the 2017 Decision because, among other things, it derives financial and other benefits as the host city for the licensed gaming facilities that would be impacted by the Decision.  There are currently two state-licensed gaming facilities and one state-licensed race track operating in Council Bluffs, from which Council Bluffs receives approximately three million in fees and taxes every year pursuant to Iowa Code Sections 99F.10 and 99D.15. The Council Bluffs community also receives approximately $8 million per year in charitable contributions from the qualified sponsoring organizations of the race track and gaming facilities. The racing and gaming facilities also draw millions of visitors to Council Bluffs each year. Council Bluffs files this action in order to protect the well-being of its citizens, the charitable contributions benefiting its citizen, its tourism industry, and the fees and taxes it receives from state-licensed racing and gaming facilities. The above-described fees and tax revenues, as well as charitable donations, tourism, and associated jobs are all imperiled by the 2017 Decision. Plaintiff has the authority to protect the interests of its citizens who are or will be injured by the decision authorizing gaming on the Carter Lake Tract.

**CLAIM FOR RELIEF (DECLARATORY JUDGMENT)**

49.     Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 48.

50.     The 2017 Decision is a final agency action subject to judicial review in accordance with 5 U.S.C. § 704, 25 U.S.C. § 2714, and 25 C.F.R. § 580.10.

51.     Plaintiff has exhausted all available administrative remedies to challenge the 2017 Decision.

52.     The 2017 Decision to approve the Tribe's site-specific gaming ordinance was contrary to law because under the unambiguous provisions of the Ponca Restoration Act and IGRA, the Carter Lake Tract cannot qualify as Indian lands eligible to be used for gaming purposes.

53.     To the extent the language of these statutes can be understood as ambiguous, when construed in accordance with accepted canons of statutory construction including, but not limited to, construction *in pari materia* and in accordance with the intent of Congress, the only reasonable and permissible interpretation of these statutes precludes treatment of the Carter Lake Tract as Indian lands eligible for gaming purposes.

54.     The 2017 Decision to approve the Tribe's site-specific gaming ordinance was contrary to law because of the agreement between Iowa and the Tribe's attorney memorialized in the December 6, 2002 Corrected Public Notice.

55.     In rendering the 2017 Decision holding that the Carter Lake Tract was gaming-eligible "restored lands" under IGRA, the NIGC unreasonably and arbitrarily failed to consider all relevant facts and circumstances known to it including, but not limited to: the Tribe's agreement with Iowa that the Carter Lake Tract would not be used for gaming under the restored lands provision of IGRA, and Iowa's and other stakeholders' detrimental reliance on this

agreement and the December 6, 2002 Corrected Public Notice; the terms of the Ponca Restoration Act; and the regulations setting forth for how DOI will interpret and apply the exceptions to the prohibition of gaming on Indian lands acquired after October 17, 1988 contained in 25 U.S.C. § 2719, including the "restored lands" exception. 73 Fed Reg. 29,354 (May 20,2008), codified at 25 C.F.R. Part 292.

56. There is a present justiciable controversy between the parties as to whether the 2017 Decision that the Carter Lake Tract qualifies for the "restored lands" exception is contrary to law.

57. Plaintiff asks this Court to reverse the 2017 Decision's determination that the Carter Lake Tract is "restored lands for an Indian Tribe that is restored to federal recognition" pursuant to the exemption detailed in the IGRA. 25 U.S.C. § 2719(b)(1)(B)(iii).

58. Plaintiff is entitled to recover expenses, including reasonable attorney fees, incurred in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, that the Carter Lake Tract does not qualify as restored lands under 25 U.S.C. § 2719(b)(1)(B)(iii);

2. A declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*, vacating and setting aside as unlawful the NIGC's November 13, 2017 decision approving the Tribe's amended gaming ordinance because the findings and conclusions in that decision are arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, see 5 U.S.C. § 706(2);

3. An order remanding the case with instructions that the NIGC deny the Tribe's request for amendment to the Carter Lake Tract ordinance;

4. An order awarding the Plaintiff its costs and reasonable attorney fees to the extent permitted by law; and

5. An order awarding Plaintiff such other relief as the Court deems equitable and just.

Dated: This 13th day of December, 2017.

                      Respectfully submitted,

By: _____/s/_____
Richard Wade, City Attorney
209 Pearl Street
Council Bluffs, Iowa 51503
Tel. (712) 328-4620
Fax. (712) 322-9255
ATTORNEY FOR PLAINTIFF